23CA1404 & 23CA2199 Estate of Gallegos 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals Nos. 23CA1404 & 23CA2199
City and County of Denver Probate Court No. 20PR420
Honorable Elizabeth D. Leith, Judge

In the Matter of the Estate of Joseph T. Gallegos, deceased.

Joanne Cdebaca, as Personal Representative, Heir and Beneficiary,

Appellant,

v.

Richard Gallegos,

Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
ORDER VACATED, AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Pat Mellen Law, LLC, Patricia Ann Mellen, Denver, Colorado, for Appellant

Jonathan S. Willett, Boulder, Colorado, for Appellee

¶ 1     In this probate proceeding concerning the estate of Joseph T. Gallegos (decedent), Joanne Cdebaca[1] appeals orders and the judgment from the probate court concerning her dispute with Richard Gallegos (Gallegos) over the administration of decedent's estate.  We affirm the judgment in part and reverse the judgment in part, vacate one order entered by the probate court, and remand the case with directions.

## I.     Background

¶ 2     We draw the following factual background from the record before us.[2]

¶ 3     Decedent died in October 2020 and was survived by multiple children.  Decedent's children included Cdebaca, Vogel, and Gallegos.  Disputes over decedent's estate arose following his death, with Cdebaca and Vogel at odds with Gallegos over who was entitled

---

[1] Lisa Vogel is listed on the caption page of the opening brief but was later dismissed from this appeal.  Only Gallegos and Cdebaca (in both her role as personal representative of decedent's estate and her individual capacity as heir and beneficiary of decedent's estate) remain parties to this appeal.

[2] Transcripts from three hearings are missing due to a malfunction with the probate court's FTR system.

to various assets of the estate. Those disputes were based in part on wills and deeds executed by decedent shortly before his death.

¶ 4 In October 2020, after decedent's death, Cdebaca initiated the Denver probate proceedings that are now before us on appeal. The probate court in those proceedings appointed Cdebaca as the personal representative (PR) of decedent's estate.

¶ 5 In April 2021, despite the ongoing probate proceedings in Denver, Cdebaca and Vogel initiated a separate action in Jefferson County seeking to quiet title to two parcels of real property owned by decedent during his lifetime. In that action, Cdebaca and Vogel alleged that two quitclaim deeds executed by decedent before his death were fraudulent. The first deed purported to transfer ownership of real property on Federal Boulevard in Denver (the Federal property) exclusively to Gallegos. The second deed purported to transfer ownership of real property located on Shirley Place in Lakewood (the Shirley property) to Gallegos and Cdebaca as tenants in common, with each owning a 50% interest. The Jefferson County District Court transferred the quiet title action to Denver for its resolution with all other probate matters concerning decedent's estate.

2

¶ 6    As relevant to the issues before us, the Denver probate court held several hearings during which it heard evidence concerning (1) the disposition of Broncos Towing LLC (Broncos Towing), a business owned and operated by decedent during his lifetime, which Cdebaca alleged was part of the estate, and (2) the quitclaim deeds that purported to transfer the Federal property to Gallegos and the Shirley property to Gallegos and Cdebaca as tenants in common.

¶ 7    After the hearings concerning Broncos Towing, the probate court found that the business was not part of the estate because decedent had transferred it to Gallegos before his death.  Thus, Broncos Towing "belong[ed] in totality to Richard Gallegos."

¶ 8    Partway through the hearings concerning the disputed parcels of real property, Cdebaca and Vogel withdrew their quiet title claims.  As a result, the court ruled that Gallegos exclusively owned the Federal property and Gallegos and Cdebaca each owned a 50% interest in the Shirley property as tenants in common.

¶ 9    Arguing that Cdebaca and Vogel had engaged in vexatious litigation, Gallegos moved for attorney fees and damages.  The probate court granted that motion in May 2023.  The following

3

month, the probate court denied Cdebaca and Vogel's motion for reconsideration.

¶ 10 In November 2023, the probate court granted a motion from Gallegos to reform a July 2023 quitclaim deed in which he mistakenly conveyed to Cdebaca half of his interest in the Shirley property when he intended to convey his entire interest to three of his other sisters.

¶ 11 Cdebaca now raises several challenges to the probate court's orders and judgment.

## II. Broncos Towing

¶ 12 Cdebaca contends that the probate court erroneously resolved the dispute surrounding Broncos Towing. Specifically, she argues that the probate court lacked subject matter jurisdiction to address this matter and that it relied on inadmissible evidence to determine the existence and value of property belonging to the business. We discern no error.

### A. Additional Facts

¶ 13 As PR of decedent's estate, Cdebaca included Broncos Towing in the inventory of estate assets that she submitted to the probate court. She alleged that Broncos Towing should be considered part

4

of the estate because "no sale or transfer of this business was ever made," as reflected by the fact that documents indicating Gallegos's ownership of the company "were filed 10 days AFTER decedent[']s death." Cdebaca then filed a petition for the appointment of a special administrator to operate and preserve Broncos Towing as an estate asset.

¶ 14 The probate court held hearings to resolve the ownership status of Broncos Towing. At the end of an August 2022 hearing, in which Ray Baty, a former Broncos Towing employee, and Gallegos testified at length about the company's ownership, the probate court determined that the business was not an estate asset but was instead owned by Gallegos.

¶ 15 In addition to contesting ownership of Broncos Towing, Gallegos sought damages arising from the sale and disposal by Cdebaca and Vogel of Broncos Towing property previously located in the backyard of a house belonging to decedent. Cdebaca and Vogel claimed that they gave Gallegos prior notice of a garage sale in which they sold some of this property and told him to "come and take anything he wanted" beforehand. According to Cdebaca,

Gallegos attended the garage sale but did not take the property he later claimed belonged to Broncos Towing.

¶ 16    Gallegos, meanwhile, presented evidence to establish exactly what Broncos Towing property Cdebaca and Vogel sold or otherwise discarded, as well as the value of that property. During the August 2022 hearing, Baty and Gallegos both testified extensively about this property, listing and describing, among other things, specific vehicles, a motor home, a snowmobile, scooters, trailers, wheel changers, and an air compressor. At the end of this hearing, the probate court determined that "the machinery and the vehicles and the tools that were behind the decedent's house and in the neighboring yards belonged to [Broncos] Towing."

¶ 17    The probate court then took written pleadings from both parties to determine the value of the Broncos Towing property and the damages to which Gallegos was entitled. Gallegos submitted evidence that included a list of missing items, screenshots of Kelley Blue Book listings and listings of items for sale in online marketplaces that Gallegos contended were the same or comparable to those items in the list he submitted, and Google Earth screenshots of decedent's house and yard that purportedly

displayed the property disposed of by Cdebaca and Vogel. In his motion for damages, Gallegos estimated that the value of the disposed-of Broncos Towing property was $30,002.74, which he explained was, aside from a few exceptions, "50% of the comparable items listed for sale." Gallegos also requested treble damages for a total judgment against Cdebaca of $90,008.22.

¶ 18    The probate court granted Gallegos's motion but awarded him only $20,000 in damages for "equipment and property" that was "the property of Bronco[]s Towing" and was "sitting in the backyard of [d]ecedent's property and . . . disposed of by [Cdebaca and Vogel]."

### B.    Subject Matter Jurisdiction

¶ 19    Cdebaca contends that once the probate court determined that Broncos Towing was not an estate asset, it no longer had subject matter jurisdiction to address any disputes about the company during the probate proceedings.

### 1.    Standard of Review and Applicable Law

¶ 20    "Subject matter jurisdiction is 'a court's power to resolve a dispute in which it renders judgment.'" *In re Estate of Murphy*, 195 P.3d 1147, 1150 (Colo. App. 2008) (quoting *In re J.C.T.*, 176 P.3d

7

726, 729 (Colo. 2007)).  "A court has subject matter jurisdiction if the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority."  *Id.* (quoting *Levine v. Katz*, 167 P.3d 141, 144 (Colo. App. 2006)).  We review jurisdiction de novo and, in doing so, consider "the nature of the party's claim and the relief sought."  *Id.*

¶ 21  The probate court's jurisdiction is defined by the Colorado Constitution and state statutes.  Article VI, section 9(3) of the Colorado Constitution provides that the probate court has "exclusive original jurisdiction in all matters of probate" in the City and County of Denver.  Section 15-10-302(1)-(2), C.R.S. 2024, states that "[t]he court has jurisdiction over all subject matter vested by article VI of the state constitution and by articles 1 to 10 of title 13, C.R.S.," and "[t]he court has full power to make orders, judgments, and decrees and take all other action necessary and proper to administer justice in the matters which come before it."

¶ 22  Section 13-9-103, C.R.S. 2024, defines the probate court's jurisdiction with more specificity.  The court "has original and exclusive jurisdiction in [Denver] of . . . [t]he administration,

settlement, and distribution of estates of decedents, wards, and absentees." § 13-9-103(1)(a). The court also "has jurisdiction to determine every legal and equitable question arising *in connection with* decedents' . . . estates, so far as the question concerns any person who is before the court by reason of any asserted right in any of the property of the estate." § 13-9-103(3) (emphasis added).

¶ 23 The statutory phrase "in connection with" has been interpreted broadly as conferring jurisdiction on the probate court over claims "logically relating to the estate." *Murphy*, 195 P.3d at 1151 ("The commonly understood meaning of 'in connection with' contemplates a logical and contextual relationship or association exhibiting 'coherence' or 'continuity.' . . . In other words, it means to 'further, advance, promote, or share a continuity of purpose.'") (quoting *People v. Baer*, 973 P.2d 1225, 1230 (Colo. 1999))).

## 2. Analysis

¶ 24 As an initial matter, the parties dispute preservation of this issue. A challenge to a court's subject matter jurisdiction, however, may be raised at any time, including for the first time on appeal. *See Herr v. People*, 198 P.3d 108, 111 (Colo. 2008). And in any event, the probate court addressed this argument, thereby

9

satisfying the objective of the preservation rule. *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) ("[T]o preserve the issue for appeal all that was needed was that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it.").

¶ 25    Turning to the merits of Cdebaca's argument, we conclude that Gallegos's pursuit of damages for the disposed-of Broncos Towing property was "logically related to the estate." *Murphy*, 195 P.3d at 1150-51. The property in question was stored in the yard of one of decedent's houses until his death. While Cdebaca was acting as PR for decedent's estate, she claimed Broncos Towing was an estate asset, and she and Vogel sold or otherwise discarded the company's property while cleaning out decedent's house and managing decedent's affairs following his death. It was only after the probate court ruled that Broncos Towing belonged to Gallegos that Cdebaca and Vogel began claiming that the probate court lacked subject matter jurisdiction to address that issue. Accordingly, because Gallegos's claims were "logically related to the estate" and, therefore, arose "in connection with" the estate, the probate court had jurisdiction to resolve the questions of who

owned Broncos Towing and what damages were owed for its missing property pursuant to section 13-9-103(3).

C. Evidence of Ownership and Value of Property

¶ 26 Cdebaca contends that the probate court relied on inadmissible evidence when determining how to value the Broncos Towing property. As best we can ascertain, she argues that the Google Earth screenshots were irrelevant and were not properly authenticated, and that the screenshots of Kelley Blue Book and online marketplace listings were inadmissible hearsay.

1. Standard of Review and Applicable Law

¶ 27 We review evidentiary rulings for an abuse of discretion. *Leaf v. Beihoffer*, 2014 COA 117, ¶ 9. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.* "Even when a trial court may have abused its discretion in admitting certain evidence, reversal is not required if the error was harmless under the circumstances." *People v. Summitt,* 132 P.3d 320, 327 (Colo. 2006).

¶ 28 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of

11

the action more probable or less probable than it would be without the evidence."  CRE 401.

¶ 29     "Authentication is a condition precedent to admissibility of physical evidence that is satisfied by evidence sufficient to support a finding that the evidence in question is what its proponent claims."  *People v. Glover*, 2015 COA 16, ¶ 12 (citing CRE 901(a)). "The burden to authenticate 'is not high — only a prima facie showing is required,' and 'a district court's role is to serve as a gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.'"  *Id.* at ¶ 13 (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)).  CRE 602 prohibits a witness from testifying to "a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."  The "threshold for satisfying the personal-knowledge requirement is not very high and may be inferable" from the "total circumstances surrounding the matter."  *Murray v. Just In Case Bus. Lighthouse, LLC*, 2016 CO 47M, ¶ 33 (citation omitted).

¶ 30     Although hearsay is not admissible, CRE 802, "[m]arket quotations, tabulations, lists, directories, or other published

compilations, generally used and relied upon by the public or by persons in particular occupations" are not excluded by the hearsay rule. CRE 803(17). This exception to the hearsay rule includes online resources satisfying these criteria. *See People v. Thornton,* 251 P.3d 1147, 1149 (Colo. App. 2010) ("We hold that the Kelley Blue Book may be admitted as proof of value under . . . CRE 803(17), without the need for expert testimony to substantiate the Blue Book's valuation.").

### 2.    Analysis

¶ 31    Cdebaca takes issue with the probate court accepting Gallegos's "submission of undated unauthenticated Google [E]arth photos" as evidence of the missing Broncos Towing property. However, the probate court does not appear to have based its conclusions about which property was missing on these images. Rather, it seems the court credited the list of items that Gallegos submitted, which appears to have come from Gallegos's personal knowledge of the missing property as demonstrated by his August 2022 testimony in which he described his familiarity with decedent, Broncos Towing, and the property at issue.

¶ 32 The nature and extent of Gallegos's familiarity with this property went to the weight the fact finder might give his testimony, not to its admissibility. *See Robinson v. People*, 927 P.2d 381, 384 (Colo. 1996) (the witness's degree of familiarity with the defendant goes to the weight to be given to the witness's identification of the defendant, not the admissibility of such testimony). Because neither the burden to authenticate evidence nor the threshold for satisfying the personal-knowledge requirement are high, *Glover*, ¶ 13; *Murray*, ¶ 33, we see no error in the probate court's decision to credit Gallegos's list of missing items informed by his personal knowledge. Even if Cdebaca is correct that the probate court erred in admitting the Google Earth screenshots because they were irrelevant and unauthenticated, these errors were harmless and therefore do not warrant reversal.

¶ 33 Cdebaca also sees error in the probate court's decision to "award[] damages of $20,000 for these alleged missing assets with no substantiation for the costs assigned per item" and without requiring Gallegos to "offer any expert valuation but rather submit[] unauthenticated printouts of hearsay online information." This argument is likewise unavailing.

14

¶ 34    "Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are not excluded by the hearsay rule.  CRE 803(17).  And online resources satisfying these criteria are not excluded; specifically, "the Kelley Blue Book may be admitted as proof of value under . . . CRE 803(17), without the need for expert testimony to substantiate the Blue Book's valuation."  *Thornton*, 251 P.3d at 1149.  The screenshots of Kelley Blue Book and online marketplace listings that Gallegos submitted were thus not inadmissible hearsay and did not require substantiation via expert testimony.  The probate court's decision to award Gallegos $20,000 of the $90,008.22 that he requested, based in part on the Kelley Blue Book and online marketplace listings, was not erroneous.

¶ 35    As the record exists before us, we cannot say that the probate court abused its discretion in admitting the challenged evidence.

III.    Subject Matter Jurisdiction Over Deed Reformation

¶ 36    Cdebaca contends that the probate court erred by granting Gallegos's motion to reform his July 2023 quitclaim deed because it lacked subject matter jurisdiction over this question.  We agree.

15

## A. Additional Facts

¶ 37   In July 2023 — two months after the probate court granted Gallegos's motion for attorney fees and damages and one month after it denied Cdebaca and Vogel's motion for reconsideration — Gallegos executed a new quitclaim deed for the Shirley property. At that time, following the court's rulings in the previous months, Gallegos and Cdebaca each had a 50% interest in the Shirley property as tenants in common. Gallegos's new quitclaim deed conveyed half of his interest in the property to three other sisters of his and conveyed the remaining half of his interest to Cdebaca.

¶ 38   Two months later, Gallegos filed a motion with the probate court seeking to reform that quitclaim deed. Gallegos explained in his motion that he had mistakenly included Cdebaca in the conveyance and had instead intended to transfer his entire interest in the Shirley property to his three sisters. In November 2023, the probate court granted Gallegos's motion, finding that (1) the Shirley property "is related to the [e]state of [decedent] and is statutorily within the ambit of this [c]ourt's jurisdiction"; and (2) "providing a 75% ownership interest in the Shirley [p]roperty to [Cdebaca] is not

16

as the [d]ecedent intended and is not as . . . Gallegos intended and would unjustly enrich [Cdebaca]."

## B.  Analysis

¶ 39     As detailed above, we review subject matter jurisdiction de novo.  *Murphy*, 195 P.3d at 1150.  The probate court "has jurisdiction to determine every legal and equitable question arising in connection with decedents' . . . estates, so far as the question concerns any person who is before the court by reason of any asserted right in any of the property of the estate."  § 13-9-103(3).  This includes jurisdiction over claims "logically related to the estate."  *Murphy*, 195 P.3d at 1151.

¶ 40     Cdebaca alleges that, when granting Gallegos's motion, the probate court "asserted indefinite jurisdiction" over the assets of decedent's estate, and "stated it retained perpetual jurisdiction to resolve essentially any disputes regarding the Shirley . . . property."  Cdebaca cites nothing, and we can locate nothing, in the record to support this characterization of the probate court's actions.  That said, we do agree that the probate court exceeded its jurisdiction when it granted Gallegos's motion to reform the July 2023 quitclaim deed.

¶ 41    The probate court had jurisdiction to determine all legal and equitable questions stemming from decedent's estate and all claims logically related to his estate.  It exercised this jurisdiction when adjudicating the competing claims to decedent's assets between Gallegos and Cdebaca and Vogel, culminating in the court's May 2023 grant of Gallegos's motion for attorney fees and damages and its June 2023 denial of Cdebaca and Vogel's motion for reconsideration.

¶ 42    However, the deed reformation issue concerned Gallegos's decision in July 2023 — after the probate court's resolution of the dispute between Gallegos and Cdebaca and Vogel over decedent's estate — to convey his interest in the Shirley property to others.  At that time, the Shirley property was no longer part of decedent's estate.  Unlike the Broncos Towing dispute, what Gallegos later decided to do with the property he received from the estate did not present a question arising in connection with the estate or a claim logically related to the estate such that it would fall within the probate court's subject matter jurisdiction.

¶ 43    In other words, the question of Gallegos's intent when executing the July 2023 quitclaim deed did not "concern[] any

18

person who [wa]s before the court by reason of any asserted right in any of the property of the estate." § 13-9-103(3). Rather, Gallegos's motion to reform the quitclaim deed concerned an asserted right in property that everyone agreed already belonged to him. The fact that Gallegos received this property from the estate is immaterial.

¶ 44 Nor does it matter, as Gallegos argues on appeal, that the initial quiet title action that Cdebaca and Vogel filed concerning the Shirley property was transferred to the probate court to be resolved as part of these proceedings. The quiet title action concerned determining ownership of the Shirley property for purposes of administering decedent's estate, not determining ownership of that property following a later separate conveyance by an individual who inherited it from the estate.

¶ 45 When granting Gallegos's motion, the probate court reasoned that decedent never intended that Cdebaca would own a seventy-five percent interest in the Shirley property. That may well be true, but the probate court lost jurisdiction to effectuate decedent's intent over this question once it divided the ownership interest in the Shirley property between Gallegos and Cdebaca. After that division was complete, Gallegos was free to do as he wished with his

50% interest, and his actions no longer concerned decedent's estate.

¶ 46 In sum, because Gallegos's request did not arise in connection with the estate, the probate court lacked subject matter jurisdiction to resolve it. Accordingly, we vacate the probate court's order granting Gallegos's motion to reform the July 2023 quitclaim deed.

## IV. Attorney Fees

¶ 47 Cdebaca challenges the award of attorney fees[3] to Gallegos, arguing in part that the probate court abused its discretion by granting fees for work on matters that were outside the scope of the probate court's fee award. Because we conclude that the probate court erred in its approach to awarding attorney fees and that the fee award requires greater clarification, we reverse the award of attorney fees and remand for a hearing on their reasonableness.

---

[3] Cdebaca also appears to take issue with the probate court's award of costs against her and its refusal to grant her request for her own fees and costs, but these issues receive only cursory attention in Cdebaca's opening brief. Because we do not address undeveloped arguments, we decline to consider these contentions. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 ("We don't consider undeveloped and unsupported arguments."), *aff'd*, 2021 CO 56.

## A.    Additional Facts

¶ 48    When granting Gallegos's motion for attorney fees and damages, the probate court cited *In re Estate of Lewis*, 93 P.3d 605 (Colo. App. 2004), and sections 15-10-602(7)(b) and (d), C.R.S. 2024, as support for its award.  Under the reasoning of *Lewis* and the requirements of the statute, the court explained, Gallegos was entitled to attorney fees because "the services provided by counsel for . . . Gallegos have resulted in an order beneficial to the estate, as [the] representation prevented the unjust attempts by . . . [Cdebaca] and . . . Vogel to deprive . . . Gallegos of property which the [d]ecedent intended for him, to include real property and property of the [d]ecedent's business, known as Bronco[]s Towing."

¶ 49    The probate court also awarded attorney fees under section 13-17-102, C.R.S. 2024, finding that "[Cdebaca] individually and in her capacity as PR for the estate and . . . Vogel made claims and brought litigation against . . . Gallegos which did not have substantial justification."

¶ 50    The probate court awarded Gallegos $54,320 in attorney fees. In doing so, it credited an affidavit from Gallegos's counsel explaining that the dollar amount comprised Gallegos's legal fees

minus, among other things, "all fees associated with the dispute over ownership of Broncos Towing."

### B. Standard of Review and Applicable Law

¶ 51 We review a trial court's award of attorney fees and costs for an abuse of discretion. *Accetta v. Brooks Towers Residences Condo. Ass'n*, 2021 COA 147M-2, ¶ 43. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or based on a misapplication or misunderstanding of the law. *Credit Serv. Co. v. Skivington*, 2020 COA 60M, ¶ 17.

¶ 52 It is also an abuse of discretion when a trial court awards attorney fees without holding a requested evidentiary hearing. *Shyanne Props., LLC v. Torp*, 210 P.3d 490, 493 (Colo. App. 2009).

¶ 53 An award of attorney fees must contain sufficient findings of fact to allow meaningful appellate review. *Yaekle v. Andrews*, 169 P.3d 196, 201 (Colo. App. 2007), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008); *see also* C.R.C.P. 121, § 1-22(2)(c).

### C. Analysis

¶ 54 Cdebaca contends that while the probate court purportedly "limited the award of attorney[] fees to those associated with the quiet title dispute," it nonetheless granted all of the fees listed in

Gallegos's attorney's affidavit. This was error, she asserts, because some of the billing entries on that affidavit "include[d] fees for activities that can be easily correlated to . . . activities [other than the quiet title dispute], such as the Bronco[]s Towing hearing in August 2022." Cdebaca identified this apparent discrepancy in the probate court, arguing that supporting documentation that Gallegos's attorney submitted did not provide sufficient detail to assess the affidavit's accuracy, and expressly requested "a hearing to address the reasonableness of the costs claimed and their relationship to the issues litigated."

¶ 55    The probate court never held the requested hearing. Instead, it issued an order crediting the affidavit and granting all of the requested attorney fees. Because due process requires that a court hold a hearing when requested to determine the reasonableness and necessity of attorney fees, *Roberts v. Adams*, 47 P.3d 690, 700 (Colo. App. 2001), the court abused its discretion by not holding the hearing that Cdebaca requested in response to Gallegos's attorney's affidavit.

¶ 56    Regarding the merits of Cdebaca's contention that the probate court incorrectly awarded fees beyond the scope of the quiet title

action, we lack sufficient information on appeal to assess this argument. When the probate court awarded fees, it emphasized Cdebaca and Vogel's attempts to deprive Gallegos of property that decedent intended for him, specifically mentioning "real property and property of the [d]ecedent's business, known as Bronco[]s Towing." However, the probate court's later explanation for the fee amount stated that Gallegos's attorney's affidavit "did not include charges related to the dispute over Bronco[]s Towing." Yet that does not precisely reflect the affidavit's language; rather, the affidavit stated that Gallegos's attorney had "removed from the billing all fees associated with the dispute over *ownership* of Broncos Towing." (Emphasis added.) The affidavit was silent as to whether the requested fees included work associated with any other disputes about Broncos Towing, such as the disposed-of property for which Gallegos received damages. And as Cdebaca points out below and on appeal, the invoices that Gallegos's attorney submitted appear to reflect at least some work associated with Broncos Towing disputes.

¶ 57      The record on appeal leaves us uncertain about which specific work the probate court's fee award encompassed and whether the fees requested by Gallegos's attorney stayed within those bounds.

Accordingly, we reverse the award of attorney fees and remand for a hearing on their reasonableness.

¶ 58    Due to our reversal of the attorney fee award and the mixed disposition of this opinion, we decline to award Gallegos the fees and costs that he requests for defending this appeal.

## V.    Cdebaca's Liability

¶ 59    Finally, Cdebaca contends that the probate court reversibly erred by assessing damages, fees, and costs against her in her individual capacity as heir and beneficiary of decedent's estate when it assigned joint and several liability to Cdebaca and Vogel and decedent's estate.  We discern no error.

### A.    Standard of Review and Applicable Law

¶ 60    As noted above, we review a trial court's award of attorney fees and costs for an abuse of discretion.  *Accetta*, ¶ 43.  A trial court's decision to allocate costs between parties or to impose joint and several liability lies within the sound discretion of the trial court. *Schuessler v. Wolter*, 2012 COA 86, ¶ 89.

¶ 61    Section 15-12-808(2), C.R.S. 2024, states that "[a] personal representative is individually liable for obligations arising from ownership or control of the estate or for torts committed in the

course of administration of the estate only if he is personally at fault."

## B. Analysis

¶ 62 Cdebaca asserts on appeal that she should not be held individually liable for damages, costs, or fees because the probate court "documented no findings of fact or conclusions of law" to support such an award against her as an individual. As support for this contention, Cdebaca simply cites the limiting language of section 15-12-808(2) and asserts that the probate court "baldly" found her individually liable.

¶ 63 However, as Gallegos points out, in its order granting Gallegos's motion for attorney fees and damages the probate court explicitly found Cdebaca liable as an individual and explained the basis of that finding. The order stated that "[t]he [c]ourt finds from the evidence adduced at trial that [Cdebaca] both individually and as PR . . . did attempt to deprive . . . Gallegos of the property given to him by . . . [d]ecedent." The probate court described how Cdebaca took and disposed of property belonging to Broncos Towing that sat in the backyard of a house belonging to decedent. The order also explained that "[t]he [c]ourt finds that [Cdebaca]

26

individually and in her capacity as PR for the estate . . . made claims and brought litigation against . . . Gallegos which did not have substantial justification."

¶ 64 This record contradicts Cdebaca's claim on appeal that the probate court "documented no findings of fact or conclusions of law to support" imposing individual liability against her. We therefore conclude that the probate court did not abuse its discretion by awarding fees against Cdebaca personally.

## VI. Disposition

¶ 65 We affirm the probate court's resolution of the dispute surrounding Broncos Towing as well as its imposition of individual liability against Cdebaca. However, we vacate the probate court's order granting Gallegos's motion to reform his July 2023 quitclaim deed. We also reverse the award of attorney fees and remand the case with directions to the probate court to hold a hearing on the reasonableness of those fees.

JUDGE FREYRE and JUDGE LUM concur.